# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, HERRING, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class PETER GONZALEZ, JR.**
**United States Army, Appellant**

ARMY 20150080

Headquarters, Fort Stewart
John T. Rothwell, Military Judge
Colonel Luis O. Rodriguez, Staff Judge Advocate (pretrial)
Colonel Peter R. Hayden, Staff Judge Advocate (recommendation)
Lieutenant Colonel Brian J. Chapuran, Staff Judge Advocate (addendum)

For Appellant:  Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Amanda R. McNeil Williams, JA (on brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Melissa Dasgupta Smith, JA; Captain Christopher A. Clausen, JA (on brief).

31 January 2017

----------------------------------
SUMMARY DISPOSITION
----------------------------------

Per Curiam:

In this case we find, after a fresh and impartial look at the evidence and taking into account the fact that the trial court saw and heard the witnesses, that the evidence supporting appellant's convictions for sexual contact are factually insufficient.  Accordingly, we overturn and vacate the judgment of the trial court.

A panel of officers and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of abusive sexual contact, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C.

GONZALEZ–ARMY 20150080

§ 920 (2012 & Supp. I 2012) [hereinafter UCMJ].[1]  The convening authority approved the adjudged sentence of a bad-conduct discharge and confinement for ninety days.

We review this case under Article 66, UCMJ.  Appellant asserts the evidence is legally and factually insufficient to sustain his convictions of abusive sexual contact.  We agree as to factual sufficiency.[2]

**BACKGROUND**

Private E-2 (PV2) KG and her roommate, Specialist (SPC) NB, decided to have a party in their barracks room due to duty being cancelled for the next day as an ice storm approached Fort Stewart.  Approximately five soldiers were in attendance, though the number varied throughout the night.  All of the attendees were under the age of twenty-one.  Appellant was one of the attendees.  He and PV2 KG were close friends, having attended basic and advanced individual training together.  Both appellant and PV2 KG played beer pong at the party.  Private KG testified she had a side beer during the beer pong game and also had multiple shots of whiskey mixed with an espresso drink.

Several hours into the party, PV2 KG began to feel sick to her stomach. Appellant and another attendee at the party, JT, assisted PV2 KG to the bathroom where she threw up.  Private KG was then assisted to her bed.  Appellant placed a trashcan beside her bed in case she felt sick again.  Appellant told JT he could leave as appellant would stay with PV2 KG and make sure she was alright.  Specialist NB left the room to spend the night with another soldier.  Appellant had stayed in PV2 KG's room on a prior occasion.  Private KG then fell asleep.  At some point during the night, appellant rolled over on top of PV2 KG and began to kiss her on the mouth.  He also kissed her on the neck.  Appellant stopped without PV2 KG ever

---

[1] The panel also found appellant not guilty of violating Article 128, UCMJ, to wit: unlawfully holding the hands of PV2 KG above her head with his hands (Charge II and its Specification); and not guilty of violating Article 120, UCMJ, touching the breasts of PV2 KG with his hands when PV2 KG was incapable of consenting to the sexual contact due to impairment by an intoxicant to wit: alcohol (Charge I, Specification 1).  In addition, appellant was found not guilty of three specifications of violating Article 120, UCMJ, sexual contact by causing bodily harm (Additional Charge I, Specifications 1-3).  These three specifications were apparently charged in the alternative to the three specifications of sexual contact while PV2 KG was incapable of consenting.

[2] Additionally, we have considered the matters personally asserted by appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find no need to comment further upon those matters.

saying anything.  Private KG did not report the incident because she feared getting in trouble for underage drinking.

At trial, PV2 KG testified that she was feeling the effects of alcohol but was *not drunk* that night.  She believed her upset stomach was caused by having little to eat that day and drinking espresso mixed with whiskey, something she had never done before.  She recalled the events of the evening, including being assisted to the bathroom and then bedroom by appellant and JT.  Private KG stated she went to bed because she was tired, not because she was drunk.  On cross-examination, she testified that she was able to walk on her own and could have made it to her bed without assistance.  Appellant rolling over on top of her was what woke her up that night.  When she woke up, she was dizzy, nauseous, and felt like the room was spinning.  She recalled appellant kissing her on the mouth and then on the neck.  She was able to speak once she woke up, but did not say anything to appellant.  She "kind of nudged him" to get him off of her and appellant stopped his advances.

Special Agent (SA) RM testified about his interview with appellant.  Appellant admitted to kissing PV2 KG on the mouth and neck.  He referred to her condition as both "asleep" and "drunk" at the time he began to kiss her.  In appellant's sworn statement to SA RM, when asked if he had "ever engaged [in] sexual activities with PV2 [KG] while knowing she was *impaired or asleep*," appellant replied, "yes, kissing."  Appellant said he realized what he was doing was wrong and stopped.  He later told PV2 KG he knew what he did was wrong and apologized to her.

JT described PV2 KG as being drunk when he and appellant assisted her to the bed.  He observed her dry heaving as she lay on the bed.  He left soon thereafter when appellant said he would take care of her.

Specialist NB testified PV2 KG started to feel sick after playing beer pong and taking several shots of liquor.  She believed PV2 KG felt sick because she had consumed too much alcohol.  Specialist NB recalled PV2 KG going to the bathroom and then to the bedroom.  When SPC NB left for the evening, PV2 KG was sitting on her bed with appellant.  Specialist NB returned to the room between 0500 and 0600 the next morning.  Appellant and PV2 KG were both there.

**LAW AND ANALYSIS**

Article 66(c), UCMJ, provides:

> In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority.  It may affirm only such findings of guilty and the sentence or such part or

> amount of the sentence, as it finds correct in law and fact
> and determines, on the basis of the entire record, should
> be approved. In considering the record, it may weigh the
> evidence, judge the credibility of witnesses, and determine
> controverted questions of fact, recognizing that the trial
> court saw and heard the witnesses.

UCMJ art. 66(c). Accordingly, this court has an independent duty to review the record and determine whether it is correct in law and fact.

Appellant asserts the government failed to prove beyond a reasonable doubt that PV2 KG was incapable of consenting to the sexual act due to impairment by an intoxicant, to wit: alcohol. After thoroughly reviewing the evidence in this case, we agree.

We are led to this conclusion for a simple reason—the evidence fails to establish beyond a reasonable doubt that PV2 KG was incapable of consenting *due to impairment by an intoxicant*. As the government concedes in its brief, shortly after the initial physical contact by appellant, PV2 KG was aware of what was happening and able to communicate and make decisions. That leaves the real issue before this court—why was she initially incapable of consenting?

Significant to our decision is the use of the terms "drunk" and "asleep" throughout the trial, as if the two are interchangeable. They are not. They are separate and distinct theories of criminality.[3] Appellant describes PV2 KG as both "drunk" and "asleep." Private KG testified she went to bed because she was tired, not because she was drunk. Special Agent RM asked appellant if he had ever engaged in sexual activities with PV2 KG when she was "impaired or asleep." The trial counsel began the opening statement to the panel quoting from the appellant's interview with SA RM, "I started to make out with her while she was asleep."

To prevail at trial, the government bears to burden of proving its theory of criminality beyond a reasonable doubt. The proof must be such as to exclude every fair and rational hypothesis except that of guilt. While the evidence establishes that

---

[3] Appellant was initially charged under three different theories of sexual contact. Those theories were: by causing bodily harm without consent; while asleep; and while incapable of consenting due to impairment by an intoxicant, to wit: alcohol. For unexplained reasons, the specifications alleging sexual contact while asleep were dismissed by the government prior to referral. Consequently, this theory was never before the panel.

the initial touching of PV2 KG by appellant was while she was incapable of consenting, it is not clear whether this was because she was asleep or intoxicated.

After taking into account all the evidence presented in this case, we find the evidence does not prove appellant's guilt beyond a reasonable doubt.[4]

**CONCLUSION**

In view of the foregoing, the findings of guilty and the sentence are set aside. The Charge and its specifications are DISMISSED. All rights, privileges, and property, of which appellant has been deprived by virtue of the findings and sentence set aside by our decision, are ordered restored. *See* UCMJ arts. 58b(c), 75(a).

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[4] In conducting our analysis, we are required "to evaluate not only the sufficiency of the evidence but also its weight." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). Article 66(c), UCMJ, states that we should "recogniz[e] that the trial court saw and heard the witnesses." This court followed the mandates of Article 66(c), UCMJ, and our superior court in reaching our decision. Our ruling overturning findings of guilt on factual sufficiency grounds was not undertaken lightly and decreed only after lengthy consideration of the law and with the utmost respect for the role of the court-martial panel in our system of justice.